Darrell Allen **BURCH**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 18234.

United States Court of Appeals
Eighth Circuit.
April 11, 1966.

George W. Healy, III, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., James H. Roussel, New Orleans, La., for Isthmian Lines, Inc.

John C. Eldridge, Morton Hollander, Robert V. Zener, Attys., Dept. of Justice, John W. Douglas, Asst. Atty. Gen., Louis C. Lacour, U. S. Atty., Washington, D. C., for the United States.

George B. Matthews, Lemle & Kelleher, New Orleans, La., A. D. Fulmer, of counsel, for Warrior & Gulf Nav. Co.

Before JONES and BELL, Circuit Judges, and BREWSTER, District Judge.

Edward E. Bedwell, of Green & Bedwell, Fort Smith, Ark., for appellant.

Charles M. Conway, U. S. Atty., Fort Smith, Ark., and James A. Gutensohn, Asst. U. S. Atty., Fort Smith, Ark., for appellee.

Before MATTHES and GIBSON, Circuit Judges and HUNTER, District Judge.

GIBSON, Circuit Judge.

Darrell Allen Burch plead guilty on September 29, 1965 to an information charging violation of Title 18, U.S.C. § 2312 (Dyer Act) based on the transporting of a stolen motor vehicle from California to Arkansas. He received a sentence of two years. Six days later he appealed, contending that he did not knowingly and intelligently waive his right to counsel.

His appearance in court came about as follows: Appellant is a young man of twenty-two years, and for about eight months had been engaged in operating a taxi in California. While driving the stolen vehicle, a 1965 Ford Mustang, he ran into a Fort Smith, Arkansas police vehicle and attempted to flee from the scene. He was shortly apprehended and charged with reckless driving and leaving the scene of an accident. He did not disclose his correct name to the police but gave an alias and said the vehicle belonged to a friend. After the traffic charge had been continued for one week, he voluntarily gave his correct name to an officer, confessed that the car had been stolen by him at Los Angeles, California, and driven by him alone to Fort Smith, Arkansas. He further told this officer he wanted to talk with a F. B. I. Agent. His wish was granted and he was interviewed by an agent of the F. B. I. that same day. Again he confessed stealing and transporting the vehicle in question and signed a written statement of the de-

tails of the crime and other personally pertinent information.

His record discloses a previous Dyer Act violation in 1960 in Boise, Idaho, for which he was sentenced under the Federal Youths Correction Act and mandatorily released four years later, and placed on parole. He was also sentenced at Whittier, California, on a burglary charge and sentenced at Los Angeles on a car theft charge, serving fifteen months as a result of these charges. At the time of the offense he was still on parole from the former Dyer Act violation.

Appellant was offered the services of an attorney by the trial judge and was expressly told by the judge "If you do not have money or property with which to employ a lawyer the court will appoint one for you." Previously he had been asked by the court if he had talked to any attorney about his case and he replied "No, I plead guilty and waive all rights." The trial court carefully explained the charge and the effect of a plea of guilty before accepting the plea. Appellant again admitted the offense and that he was in truth and in fact guilty.

At the time of receiving the two-year sentence, he made no complaint or any statement concerning the proceedings, nor did he request at that time the appointment of counsel. Upon reflection and apparently after consultation with his companions in the county jail he wrote a letter to the trial court on October 5, 1965, stating that he files this notice of appeal in accordance with Rule 37(a) (2) of Title 18, U.S.C.A. and under authority of Rule 37(a) (1) requested the court clerk to prepare his notice of appeal; and further elected not to serve his sentence "until such time as the circuit court rules on this motion."

An application to proceed in forma pauperis in the appeal was filed pursuant to Title 28, U.S.C. § 1915 and denied by the trial court, as "not taken in good faith."

The notice of appeal was filed by the clerk and this court, upon application, granted the appeal in forma pauperis and appointed counsel. See Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) granting a right to counsel on appeal. In his application for leave to proceed in forma pauperis and for appointment of counsel, appellant said after making the formal recitations:

"The final sentence imposed on me does not stipulate whether the time is to run concurrent or consecutive to my Youth Act sentence. Nor does it specify when the said sentence is to expire, or start. At the time of sentencing, I did not fully understand the provisions and guarantees of Rule 11, USC nor do I to date. For this reason, I request that counsel be appointed me, and that said counsel consult me prior to any verbal or oral arguments in this matter. I am of the opinion that Rule 11 is in violation in this case."

The only question involved in this appeal is whether the appellant has knowingly and intelligently waived his right to counsel. Under the Sixth Amendment he has the right in any federal court "to have the Assistance of Counsel for his defence." As appropriately stated in Johnson v. Zerbst, 304 U.S. 458, at 467, 58 S.Ct. 1019, at 1024, 82 L.Ed. 1461 (1938):

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence."

and then at 464, 58 S.Ct. at 1023:

"The determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

The trial court was given no opportunity to review the proceedings nor was

any application made to it to set aside the judgment and to appoint counsel. The trial judge did utilize the application for an appeal in forma pauperis under § 1915 to state his views on the court proceedings, in which he expressed his opinion that the appeal was not taken in good faith.

The appellant's contention that the court violated Rule 11, (Fed.R.Crim.P.) in accepting his plea of guilty is based on his assertion that he did not fully understand the provisions and guarantees of Rule 11.

Rule 11 is a statement of the existing law and in its pertinent part on pleas of guilty says: "The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." Here there is no complaint that the plea was not made voluntarily. The crime was admitted and a confession made even before the federal authorities were aware of this particular violation. Appellant's statements were at all times voluntary and were made as a result of the appellant's personal desire to proceed with the consideration of the Dyer Act violation under which he was here sentenced. He undoubtedly understood "the nature of the charge" as the charge was not only fully explained to him by the court but he was then presently knowledgeable about this type of offense, then being on parole for the same offense.

█ Appellant, however, presents this appeal relying on a series of cases, commencing with Johnson v. Zerbst, supra [1] and Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948), a war time espionage case. Mr. Justice Black in speaking for the Court discusses the constitutional guarantee of the Sixth Amendment providing for assistance of counsel holding that a plea, entered by a defendant who had been kept incommunicado "as a dangerous enemy alien", made upon the advice of a government lawyer-agent of the F.B.I., to a 14-page indictment, alleging conspiracy to violate the Espionage Act of 1917, was a violation of defendant's constitutional rights. Under the aggravated circumstances of Von Moltke the defendant clearly had been refused assistance of counsel. An accused appearing without counsel "imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused" and in discharging this duty "[A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand." See Johnson v. Zerbst, supra.

Appellant also urges Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) as supporting his position of a claimed violation of Rule 11. This case is not in point as the investigating authorities refused a specific request of a person accused of a crime to see his lawyer before being subjected to further interrogation. In Escobedo there clearly was no waiver of right to counsel and a confession thus obtained was held inadmissible. Appellant does not fall within the ambit of that case. Reliance is also placed on Smith v. United States, 238 F.2d 925 (5 Cir. 1956), where the accused was sentenced for a total period of thirty years on kidnapping charges. The accused was there allowed to plead guilty without assistance of counsel. The conviction was set aside on the basis that an intelligent and understanding waiver of his right to indictment and right of counsel was not made and on the basis that the judge had conferred with the prosecution about the defendant's prior criminal record before accepting the waivers and the plea of guilty.

There are many distinguishing factors present in *Smith* that are not found in the case at bar.

Lastly, defendant relies on Michener v. United States, 181 F.2d 911 (8 Cir. 1950) where a defendant received thirty years on counterfeiting charges while still un-

---

1. A counterfeiting case in which the defendants pleaded not guilty and stood trial without the assistance of counsel.

der a thirty-year remaining sentence on a state charge. The court there upheld the sentence against collateral attack that defendant was not represented by counsel. The Court at p. 918 made this observation:

"Nor is it the duty of the trial court judge to explain and set out for an accused the possible defenses he might adduce to the charges against him. If an accused were represented by counsel, it most obviously is not the duty nor the privilege of the judge to suggest or explain possible defenses in behalf of accused. And upon finding a competent, intelligent and intentional waiver of counsel, it is not then any the more the duty of the trial judge to advise an accused respecting possible defenses. It is the responsibility of the court that the accused has been informed of his right to counsel and to appoint counsel if accused is unable to procure one and if the accused so desires. But it is not the duty or the responsibility of the trial judge to give legal advice to an accused, or to any party in any federal proceeding. Cf. Holmes v. United States, 8 Cir., 126 F. 2d 431, 433."

As indicating a lack of intelligent waiver of counsel, appellant presents in his brief the following factual contentions:

1. "The transcript indicated that the accused was eager to waive all of his rights even though he did not know what the effect of the charge was, did not know the effect of the plea of guilty, did not know what the maximum or minimum sentence was, did not know whether a fine would be imposed, or imprisonment, or both, but anxiously, voluntarily and eagerly waived all rights before he knew even the nature of them or the consequences of his acts."

2. His statement "I don't want to go in front of a jury" made in response to an explanation of the effect of a waiver of indictment;

3. "The accused did not fully understand the effect of a plea of guilty as it related to a previous conviction in that he did not understand whether he could serve his parole violation time concurrently with the sentence imposed by the federal judge."

We feel these facts and the contentions and inferences drawn therefrom do not warrant the conclusion that the waiver of counsel was not intelligently made for the reasons:

1. Appellant was eager to waive his rights as he was fully cognizant of the violation, freely confessed and voluntarily acknowledged his guilt while aware of the range of punishment; and he was not entitled to know what sentence the court would impose. He cannot bargain with the court and the court at this stage of the proceedings was only concerned with waiver and acceptance of plea of guilty. The punishment to be assessed could only be considered by the court after conviction or after a plea of guilty is entered;

2. His statement about aversion to appearing before a jury does not indicate a lack of comprehension of the charges and the consequences thereof. Many guilty persons, including those of high intelligence, do not desire to appear before a jury, particularly after having admitted guilt and where they are the possessors of a criminal record. His feelings on this score are understandable and normal;

3. He was not entitled to bargain with the court or to find what punishment would be meted out to him. He is entitled to know the range of penalty, which fact he undoubtedly knew, and he was expressly advised by the judge on this point before his plea was accepted. The length of sentence was entirely a matter for the court's discretion within the permissible limits set forth by law. Whether the sentence was to be concurrently served along with the period of parole was again a matter solely in the discretion of the trial judge. This question now is actually academic as under the Youth Corrections Act sentence of February 1960, the appellant must be

"discharged unconditionally on or before six years from the date of his conviction." Title 18, U.S.C. § 5017(c).

Many of the cases cited by appellant's counsel are cases involving capital crimes wherein the court has stressed the need and desirability of counsel. With these we are in full accord, and in fact think it is preferable for an individual charged with a criminal violation to be represented by counsel, whatever the circumstances are, and to have the assistance of counsel in arranging a defense or in entering a plea of guilty. The constitution, however, does not require that counsel be forced upon an individual and does not prohibit the waiver of a right to counsel. See Carter v. People of State of Illinois, 329 U.S. 173, 174, 67 S.Ct. 216, 91 L.Ed. 172 (1946).

We think that the appellant knowingly and intelligently waived his right to counsel and that the experienced trial judge investigated in open court the competency of this waiver as long and as thoroughly as the circumstances of this case demanded. We are here confronted with a simple Dyer Act violation of transporting a stolen motor vehicle across state boundaries. The charge is simple and the appellant was aware of the violation and in fact was on parole for a similar violation on a sentence imposed in 1960. The court informed him again of the extent of punishment possible on such violation and he had freely admitted this violation to others and to the Federal Bureau of Investigation before he was charged with the crime. Appellant was not a first offender, was no novice in the criminal field, had made various court appearances, all of which clearly indicate that he was fully aware of the nature and character of the offense with which he was charged and the maximum extent of punishment to which he could be subjected upon being found guilty of this offense.

The experienced trial judge showed a due regard for appellant's personal and constitutional rights and had an informal investigation made by the Probation Department before imposing sentence. The sentence was extremely moderate in view of appellant's past record and a thorough reading of the court record demonstrates that appellant was treated fairly in all respects and was accorded his constitutional rights.

The judgment is affirmed.